IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00221-MEH

DARNELL EMERSON WASHINGTON,

    Plaintiff,

v.

JIMMY MARTINEZ,

    Defendant.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff, proceeding pro se, initiated this action on January 25, 2019, asserting Defendant violated his constitutional rights by moving him into a cell contaminated by blood and human waste. Plaintiff filed an Amended Complaint on August 19, 2019, asserting similar, however less detailed, factual allegations. In response, Defendant filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing Plaintiff fails to state a plausible claim for relief, Defendant is entitled to qualified immunity, and the Prison Litigation Reform Act ("PLRA") bars Plaintiff's claim for compensatory damages (ECF 50). For the reasons that follow, the Court grants Defendant's Motion.

**STATEMENT OF FACTS**

    The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is incarcerated at the Fremont Correctional Facility ("FCF") in Canon City, Colorado, where Defendant works as a correctional officer. On June 28, 2018, Defendant moved Plaintiff from cell C-3 to cell A-12, in which he was locked down upon arrival. Once inside, Plaintiff noticed the cell "had a smell to it wich [sic] was caused by feces and other human waste as well as blood on the floors and walls of the cell." Am. Compl. 4. There were multiple open cells in A-pod and C-pod, the group of cells Plaintiff had been moved from and moved into, respectively. Prior to moving Plaintiff into A-12, Defendant had made a report to his supervisor that a bio-hazard crew was needed to clean up the cell, but a bio-hazard crew never showed up. Plaintiff asked Defendant for help, but Defendant ignored Plaintiff and continued to walk his rounds until his shift ended. Correctional Officer "Vigil Smith" then came on shift and was outraged by the smell and conditions of A-12. She notified her supervisor, who was also outraged because the cell was labeled "off-limits." Plaintiff suffers from multiple mental health conditions and believes this experience caused him mental and emotional distress in addition to putting him at risk of exposure to infectious diseases.

A week before Plaintiff's move to A-12, Plaintiff, Defendant, and Defendant's supervisor had a meeting about problems Plaintiff had been having with Defendant. Plaintiff was removed from the mental health program at FCF, had not received any mental health treatment for fourteen months and, as of filing his Amended Complaint, was still not receiving such treatment. Prior to that meeting, Plaintiff had filed a lawsuit against a different correctional officer who had allegedly left him in a cell full of human waste.

## LEGAL STANDARDS

**I.     Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation and citation omitted).

## II. Treatment of a Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* Accordingly, the Court must "not supply additional

4

facts, nor . . . construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks,* 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir. 1989)).

## **ANALYSIS**

Plaintiff's Amended Complaint explicitly asserts one claim against Defendant in his individual capacity pursuant to 42 U.S.C. § 1983 for violation of his Eighth Amendment right to be free from cruel and unusual punishment. Am. Compl. 4-6, ECF 47. The Court understands the Amended Complaint, liberally construed, as also asserting a second claim for retaliation in violation of the First Amendment. Defendant moves to dismiss Plaintiff's claims arguing: (1) Plaintiff fails to allege plausible claims for First or Eighth Amendment violations, (2) Defendant is entitled to qualified immunity as to both claims, and (3) Plaintiff's claims for compensatory damages are barred by the PLRA.

### **I. Plaintiff's Claim for Violation of the Eighth Amendment**

Plaintiff alleges Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment when he moved Plaintiff to a cell Defendant knew was contaminated by blood and the smell of human waste. Defendant argues Plaintiff's claim should be dismissed because (1) Plaintiff fails to state a plausible Eighth Amendment violation and (2) Defendant is entitled to qualified immunity. Plaintiff responds by reiterating his allegation that Defendant's actions were unconstitutional and arguing Defendant is not entitled to qualified immunity because he knew when he moved Plaintiff that the cell was contaminated and, thus, his actions were "premeditated."

Under the Eighth Amendment, prison officials must "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter,

and medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). However, the Eighth Amendment's prohibition on cruel and unusual punishment "'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To state a "conditions of confinement" claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is "'sufficiently serious'" to implicate constitutional protection, and (2) prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

To satisfy the first, objective requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). In reviewing the seriousness of a condition, a court necessarily relies on the particular facts of each situation, including the "circumstances, nature, and duration" of the challenged condition. *Id*. at 974. While not dispositive, the length of exposure to the hazardous condition is "of prime importance." *Id*. To satisfy the second, subjective requirement, the plaintiff must present evidence of the prison official's "culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Wilson*, 501 U.S. at 297; *see Farmer*, 511 U.S. at 837 (holding deliberate indifference exists only when the defendant "knows of and disregards an excessive risk to inmate health and safety."). A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate," as long as the official should have understood the possibility that harm might ensue. *Farmer*, 511 U.S. at 842. "Whether a prison official had the requisite knowledge of

6

a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006).

Plaintiff alleges that on June 28, 2018, Defendant moved him to a new cell. Once locked inside, Plaintiff noticed the cell "had a smell to it wich [sic] was caused by feces and other human waste as well as blood on the floors and walls of the cell." Am. Compl. 4. He alleges that prior to moving him, Defendant had made a report stating he needed a bio-hazard crew to come clean the cell, but a crew never showed up. Plaintiff alleges he asked Defendant for help, but was ignored, and Defendant went about walking his rounds. Plaintiff continues that he remained in the cell "for hours," until Defendant got off his shift and a new correctional officer came on duty.

The Tenth Circuit has recognized that "human waste has been considered particularly offensive so that 'courts have been especially cautious about condoning conditions that include an inmate's proximity to [it].'" *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)); *DeSpain*, 264 F.3d at 974 ("[E]xposure to human waste carries particular weight in the conditions calculus."). However, it has also instructed that "[a]n inquiry into conditions of confinement by necessity relies on the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered." *DeSpain*, 264 F.3d at 974 (quotation omitted).

In prior cases involving complaints of conditions related to human waste, the Tenth Circuit has found the objective component of the claim satisfied when the conditions existed for a longer duration, at a greater severity, or both, compared to those alleged by Plaintiff in this case. For example, in *McBride v. Deer*, the court held that a three-day period in a feces-covered cell was a sufficiently serious condition to satisfy the objective requirement of a claim. 240 F.3d at 1292.

7

The *McBride* court noted, however, that "conditions, such as a filthy cell, may be 'tolerable for a few days.'" 240 F.3d at 1291 (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)). In *DeSpain v. Uphoff*, the complained-of condition lasted for even less time. 264 F.3d at 972-73. In that case the Tenth Circuit observed that "[b]ecause the flooding conditions described by Mr. DeSpain lasted *only thirty-six hours*, he must allege significant deprivations in order to state a successful conditions of confinement claim." *Id*. at 973 (emphasis added). The court in that case found the conditions sufficiently serious where the plaintiff alleged his cell was flooded with four inches of standing waste water contaminated with feces, urine, and partially eaten food for that thirty-six-hour period. *Id*. at 972-73.

Courts analyzing conditions which lasted for even shorter periods of time, including just a couple of hours, found the objective requirement satisfied where the conditions were even more severe, involving direct physical contact of the plaintiff with human waste. *Compare Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (accepting, without discussion, that plaintiff's allegations she "got some of the solid waste on her arm" due to inadequate protective gear "may be able to satisfy the objective component"), *Orwig v. Ladd*, No. 17-cv-02596-PAB-NYW, 2018 WL 3596754, at *7 (D. Colo. July 26, 2018), *report and recommendation adopted*, No. 17-cv-02596-PAB-NYW, 2018 WL 3970556 (D. Colo. Aug. 20, 2018) (holding sufficiently serious conditions where plaintiff, for two hours, was required to "clean up a raw sewage spill that was not limited to his own human waste, without any protective equipment that would have protected him from coming into physical contact with the waste"), and *Havens v. Clements*, No. 13-cv-00452-MSK-MEH, 2014 WL 1213804, at *7 (D. Colo. Mar. 24, 2014) (finding "that [the] seriousness of the alleged deprivation could meet the Eighth Amendment standard . . . . [where]

Mr. Havens was not only exposed to human waste, but he alleges that he had to lay in it for several hours") *with Barnes v. Wiley*, 203 F. App'x 939, 940 (10th Cir. 2006) (finding conditions not sufficiently serious where the plaintiff was "subjected to the smell of urine and feces between permitted flushes" because the toilet in his cell was timed to allow only two flushes per hour) *and Washington v. Garfield Cty. Det. Ctr.,* No. CIV-15-899-F, 2015 WL 9601803, at *3 (W.D. Okla. Dec. 3, 2015), *report and recommendation adopted,* No. CIV-15-0899-F, 2016 WL 67805 (W.D. Okla. Jan. 5, 2016) (finding insufficient allegations that the plaintiff was on lock down in a cell contaminated with urine and feces and with no running water for a period of approximately three hours).

Plaintiff alleges that he was locked down "for hours" in a cell with "a smell to it wich [sic] was caused by feces and other human waste as well as blood on the floors and walls of the cell." Am. Compl. 4. Elsewhere in the Amended Complaint and in his Response to Defendant's Motion to Dismiss, Plaintiff alleges he was "exposed" to human waste and other bodily fluids while locked down in cell A-12. *Id*. at 6 ("c/o Martinez who was responsible for the living unit exposed me to human waist [sic]."); Resp. 3 ("I was exposed to human feces, urine and blood for hours."). Plaintiff also alleges Defendant "repeated the same thing that the other c/o had already done," right after stating he had filed a law suit against another c/o who had "left [him] in a cell full of human waste." Am. Compl. 5.

Defendant argues that "[i]t is unclear if Plaintiff is alleging that human waste was actually present in the cell at the time he was housed in it or if the cell only had the smell of human waste." Mot. to Dismiss Am. Compl. 2. Plaintiff's allegation that the cell "had a smell to it wich [sic] was caused by feces and other human waste as well as blood on the floors and walls of the cell" can be

9

read two ways: as describing a cell with a smell caused by feces and other human waste that also has blood on the floors and walls; or, as describing a cell with a smell caused by feces, human waste, and blood, all of which are on the floors and walls. Although Plaintiff does not make explicitly clear which of the two scenarios he is describing,[1] given his other allegations of "exposure" and the comparison to a previous situation when he was in a cell "full of human waste," the reasonable inference in Plaintiff's favor would be that his allegations describe a cell with both feces and blood on the floors and walls.

Although the Court can make the inference Plaintiff describes a cell with feces and blood on its walls and floor, it cannot infer further details of the cell's condition. *See Peterson,* 149 F.3d at 1143 (the Court must "not supply additional facts . . . for plaintiff that assumes facts that have not been pleaded."). Plaintiff makes no allegations concerning the severity of the complained-of conditions (e.g., the amount of human waste and blood or its location in his cell) or the extent of his exposure (e.g., whether his person or property had any contact with the human waste or blood). Plaintiff also fails to allege the amount of time he remained in the contaminated cell. Plaintiff repeatedly says he was in the cell "for hours," without further detail as to the duration. He alleges that he remained in the cell from the time Defendant moved him until Defendant's shift was over.

---

[1] After Defendant filed his Motion to Dismiss, Plaintiff filed a declaration, signed under penalty of perjury, related to the allegations made in his Amended Complaint. Decl. of Darnell Washington, ECF 54. Although this Declaration does explicitly state there was "feces and other bodily fluids on the walls" of the cell, *id.*, the the Court is unable to consider this Declaration at the motion to dismiss stage. *See Alexander v. Oklahoma,* 382 F.3d 1206, 1214 (10th Cir. 2004) (noting that "[w]here a party has moved to dismiss under Rule 12(b)(6) for failure to state a claim . . . and matters outside of the pleadings have been presented to the court for consideration, the court must either exclude the material or treat the motion as one for summary judgment" (quotation omitted); *see also Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference...." (citation omitted)) and *Archuleta v. Wagner,* 523 F.3d 1278, 1281 (10th Cir. 2008) (noting that, on a motion to dismiss, "[t]he court ... is 'limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint' " (quoting *Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995))).

From this, the Court can only infer Plaintiff was in the cell for, at most, less time than a correctional officer's full shift.

In light of the Court's review of precedent, Plaintiff's allegations are more similar to those that have been described as "minor deprivations suffered for [a] short period[]," *DeSpain*, 264 F.3d at 974, than those that have constituted constitutional violations. The conditions alleged in this case are similar to those alleged in *McBride*, which addressed a plaintiff living in "squalor—more specifically, a feces covered cell." 240 F.3d at 1291. However, in that case the Tenth Circuit held the objective component of the claim satisfied where the plaintiff had remained in those conditions for three days. *Id*. at 1292. Three days is a significantly longer period of time than the "hours" Plaintiff alleges in this case. As noted above, in other cases where the complained-of conditions lasted for comparably short durations, the plaintiffs also alleged direct physical contact between themselves and/or their property and the human waste. Plaintiff here makes no allegations that he had direct physical contact with the human waste or fluids that were on his cell's floor and walls. While the Court is not minimizing the indisputably unpleasant experience of spending "hours" in a cell with feces and blood on the walls and floor, it concludes that taking Plaintiff's limited allegations as true, Plaintiff fails to state a plausible claim for an Eighth Amendment violation due to the short duration and indirect nature of his exposure to the complained-of conditions. Accordingly, the Court dismisses Plaintiff's Eighth Amendment claim.

## II.     Plaintiff's Claim for Retaliation in Violation of the First Amendment

Although Plaintiff only explicitly cites the Eighth Amendment in his Amended Complaint, he also alleges Defendant "retaliate[ed] on [him] for filing a lawsuit against another c/o . . ." Am. Compl. 5. Therefore, the Court liberally construes the Amended Complaint as asserting a second

11

claim for retaliation in violation of the First Amendment. Defendant moves to dismiss Plaintiff's retaliation claim, arguing Plaintiff fails to state a plausible claim for a First Amendment violation and that Defendant is entitled to qualified immunity.

To assert a First Amendment retaliation claim, a plaintiff must allege: (1) he was engaged in constitutionally protected activity, (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's action was substantially motived by the plaintiff's exercise of a constitutionally protected activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000); *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). In the prison context, courts must treat retaliation claims "with skepticism because 'every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)); *Barksdale v. Connaghan*, No. 10-cv-02491-CMA-CBS, 2011 WL 3664382, at *10 (D. Colo. July 28, 2011). Thus, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922. F.2d 560, 562 n.1 (10th Cir. 1990).

Here, although Plaintiff satisfied the first element of his retaliation claim, *see, e.g., Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007) (stating that filing a lawsuit is a constitutionally protected activity), Plaintiff fails to sufficiently allege the second and third elements. To satisfy the second element, Plaintiff must assert that Defendant's actions would chill an ordinary person from continuing to file lawsuits. *Shero*, 510 F.3d at 1203. Plaintiff makes no

such allegation. Moreover, although certainly not dispositive, persistence in speech is some evidence that the defendant's actions would not prevent such speech. *See Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) ("Smith's persistence in maintaining his website offers some evidence that Plati's actions did not prevent such private speech."); *How v. City of Baxter*, 217 F. App'x 787, 798 (10th Cir. 2007) (holding that the defendant was entitled to qualified immunity on the plaintiff's First Amendment retaliation claim, in part, because the plaintiff "continued to exercise his First Amendment rights thereafter . . . ."). Here, Plaintiff claims Defendant retaliated against him for filing a lawsuit against another correctional officer by moving him into a cell Defendant knew was contaminated. However, after the move, Plaintiff has continued to file lawsuits, such as the present case. This provides support for the conclusion that the move into an allegedly contaminated cell for a short period of time would not dissuade a person of ordinary firmness from continuing to engage in the protected conduct of filing lawsuits.

Plaintiff also fails to allege Defendant's actions were substantially motivated by Plaintiff's exercise of his constitutionally protected activity. *Worrell*, 219 F.3d at 1212. Plaintiff's only allegation is that Plaintiff "feel[s] [Defendant] was retaliating on [him] for filing a lawsuit . . ." Am. Compl. 5. This allegation does not state "specific facts showing retaliation." *Peterson*, 149 F.3d at 1144 (quoting *Frazier*, 922 F.2d at 562 n.1). Instead, it does nothing more than allege Plaintiff's "personal belief that he is a victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

Because Plaintiff fails to allege the second and third elements of a retaliation claim, he fails to state a plausible claim for violation of the First Amendment. Accordingly, the Court dismisses Plaintiff's claim for retaliation. Because no claims remain, the Court need not address Defendant's

argument that Plaintiff's claims for compensatory damages for mental and emotional distress are barred by the PLRA.

## **CONCLUSION**

Plaintiff fails to state a plausible claim that Defendant's conduct violated either his First or Eighth Amendment rights. Therefore, Defendant's Motion to Dismiss [filed August 29, 2019; ECF 50] is **granted**. The Clerk of the Court is directed to close this case.

SO ORDERED

Dated at Denver, Colorado, this 14th day of January, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge